**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLYN L. LAGG,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Civil Action No. 2:15-cv-07872 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of *Pro se* Plaintiff Carolyn L. Lagg's ("Plaintiff" or "Claimant" hereinafter) appeal of Administrative Law Judge ("ALJ") Leonard Olarsch's denial of Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act") for the period of June 1, 2007 through December 27, 2011. The Court's jurisdiction to review Plaintiff's appeal falls under 42 U.S.C. § 405 (g) and pursuant to Local Civil Rule 9.l (f) the Court resolves this matter on the parties' briefs. After reviewing the submissions of both parties, the Court affirms the final decision of the Commissioner of Social Security (the "Commissioner") for the reasons stated herein.

# I.    BACKGROUND[1]

## A. Procedural History

On August 19, 2010, Plaintiff applied to the Social Security Administration (the "Administration") for SSI and DIB alleging disability as of June 1, 2007. R. at 249; 261. The Administration denied Plaintiff's initial application on December 13, 2010 and then again upon reconsideration on February 25, 2011. R. at 152. Plaintiff requested an administrative hearing which was held on March 8, 2012 before ALJ Richard L. De Steno. R. at 119-38. Subsequently, ALJ De Steno issued decision unfavorable to claimant on April 3, 2012. R. at 152-58. Claimant requested review by the Appeals Council review this decision. On May 31, 2013, the Appeals Council issued an order vacating the ALJ's decision and remanding the matter for resolution of various issues noted in the Appeals Council's order[2]. R. at 167-70. Per said order, a second administrative hearing was held before ALJ Olarsch on November 13, 2013. R. at 73. On December 23, 2013, ALJ Olarsch issued an opinion[3] finding Claimant was not disabled within the meaning of the Act for the period of June 1, 2007 through the date of the decision. R at 55.

Subsequent to ALJ Olarsch's determination, Plaintiff requested the Appeals Council to review the administrative decision of ALJ Olarsch dated December 23, 2013. R. at 5. On June 18, 2015, the Council notified Plaintiff that her request was granted and that "the Council proposed to issue a decision finding the claimant 'disabled' beginning on December 28, 2011" this was apparently based on the fact that Plaintiff attained the age of 55 on December 29, 1956 (r. at 122) which placed her in a different category under the Act. R. at 5. The Council

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 9.

[2] Because the Court writes for the parties who are familiar with the facts and procedural history of the case, the Court refrains from reiterating the Appeals Council's findings in the order dated May 31, 2013 and addresses only those facts relevant to the pending appeal. For the Appeals Council's May 31, 2013 order see the Administrative Record at pages 167 through 170.

[3] The Court notes ALJ Olarsch's December 23, 2013 opinion is the second decision issued by an ALJ in this matter and further highlights that for purposes of this opinion ALJ Olarsch's findings are those referenced herein.

also included in this notification that Plaintiff was given the opportunity to submit any comments or new and material evidence within 30 days from the date of said notice. Id. Thereafter Plaintiff failed to make any submissions. Id. On March 3, 2015, Plaintiff's attorney ceased representation. Id. at 35.

On September 10, 2015, the Council issued a decision stating that it "adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable" however it "does not adopt the Administrative Law Judge's finding or conclusion regarding whether the claimant is disabled for the period beginning December 28, 2011." Id. The Council further affirmed the ALJ's findings at steps 1 through 4 and that Plaintiff is able to perform a reduced range of light work but unable to perform any past relevant work. Id. at 6. As further explained in the Council's decision, an individual with the vocational factors and the residual functional capacity of the Plaintiff to perform a reduced range of light work from the period beginning on December 28, 2011 is deemed disabled under Rule 202.6, Table No. 2 of CFR Part 404, Subpart P, Appendix 2. Id. Alternatively, for the period prior to December 28, 2011, an individual with the vocational factors and residual functional capacity of the Plaintiff to perform the same reduced range of light work is deemed not disabled as set forth in Rule 202.14, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2. Id. Therefore, the Council concluded that the Plaintiff became disabled within the meaning of the Act pursuant to Section 1614 (a)(3)(A) on December 28, 2011. Id.; 42 U.S.C. § 1614(a)(3)(A). On November 3, 2015, Plaintiff filed the Complaint (ECF No. 1, Complaint ("Compl.")) which initiated the appeal currently before this Court contesting the finding that Plaintiff is not disabled for the time period of June 1, 2007 through December 27, 2011. R. at 6; Compl. ¶ 4.

### B. Factual Background

#### 1. Plaintiff's Testimony

Plaintiff, Carolyn L. Lagg, born on December 29, 1956, was 53 years old on the date of filing for SSI and DIB. R. at 6; 122. Plaintiff testified before ALJ Olarsch on November 13, 2013 in Newark, New Jersey. During this hearing, Plaintiff testified that she completed approximately two and a half years of college and that in addition to food stamps her former spouse provides her with financial support. Id. at 78; 109. Plaintiff asserted she was last employed in 2007 as a sales representative and because of shoulder issues she was unable to perform her duties, ultimately resulting in her termination. Id. at 78-9.

Plaintiff further testified that she experiences constant pain in her lower back due to back spasms and four herniated and bulging discs for which she is prescribed Percocet. R. at 85; 101. As a result of her lower back pain, Plaintiff stated that she is unable to sleep or perform daily activities such as grocery shopping, cleaning or laundry. Id. at 85; 100. Plaintiff further explained that her back pain radiates down her legs, which affects her ability to walk, sit or stand. Id. at 86. Plaintiff testified that due to her back spasms she is only able to sleep two hours at a time without interruption and that she is also forced to sleep on her surgical shoulder, which she explained is bothersome as it is arthritic. Id.

Plaintiff testified that she is able to sit for twenty minutes at a time, that she is able to lift about two and a half pounds and that pain in her back, leg and shoulder would prevent her from lifting any more than this weight. Id. at 86; 89; 90. However, Plaintiff further clarified that she would only be able to lift less than two pounds with her dominant, non-surgical shoulder. Id. at 92. Plaintiff asserted that she has difficulty with stairs and must sit while in the shower. Id. at 93-4.

Plaintiff testified that she suffers from anxiety and is prescribed Tranxene to treat this condition. Id. at 99-100. Plaintiff asserted that she has at least two anxiety attacks a day and that she also suffers from panic disorder. Id. at 100; 106. Plaintiff stated that she drives once a week from her house to Walgreens, which is a distance of approximately eight-tenths of a mile. Id. Plaintiff stated that she otherwise spends her typical day "in the house all day long, seven days a week…focusing on [] these problems" and because of these issues her "life has come to an end for the last six years." Id. at 104; 108. Plaintiff stated that she never has a "good day" whether due to her physical limitations, mental impairments or both.  Id. at 107.

### 2.   Medical Evidence for the Relevant Time Period

In April 2007 an MRI of Plaintiff's right shoulder revealed a partial tear. Id. at 60; 344. Soon thereafter in August 2007 orthopedist Dr. Samuel Snyder, M.D., operated on Plaintiff's right shoulder to repair the tear. Id. at 420. Plaintiff's shoulder improved however Plaintiff began to experience stiffness in her left shoulder in January 2008. Id. at 411; 409. Plaintiff began to attend physical therapy and by May 2008 there was significant improvement.  Id. at 399. By October 2008, Plaintiff demonstrated significant improvement in her range of motion and by November 2008, Plaintiff's range of motion was near normal in her right shoulder and progressing in her left. Id. at 385.

In 2010 a lumbar spine MRI revealed left paracentral/foraminal disc herniation contacting the left L3 nerve root, exerting pressure on the thecal sac, smaller left foraminal disc herniation, with an annular tear and minimal disc bulging at L5-S1. Id. at 367. The lumbar MRI also revealed a possible aneurysm. Id. at 366; 758. Dr. Howard Baruch, M.D. examined Plaintiff in July 2010 and recommended Plaintiff seek follow up for the possible aneurysm by visiting the emergency room.  Dr. Baruch rendered Plaintiff able to perform light duty work absent heavy

lifting and overhead reaching with the left upper extremity. Id. at 697-98. In April 2010, Dr. Robert Kayal, M.D., assessed Plaintiff and determined she had a 5/5 normal gait, normal reflexes, mildly positive Hawkin's test, some shoulder and lower back tenderness. Id. at 460-65; 77. In January 2011, Dr. Kayal found Plaintiff's complaints of pain in her leg and ankle were inconsistent with MRI findings. R. at 535; 755.

## II.   STANDARD OF REVIEW

This Court must affirm the ALJ's decision if it is supported by substantial evidence.   42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).   "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).   The "substantial evidence standard is a deferential standard of review." *Id.*   The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000).   But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).   It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).   Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis.   Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

### III.   THE FIVE STEP EVALUATION PROCESS TO DETERMINE DISABILITY UNDER THE ACT

The Social Security Act authorizes the Administration to pay a period of disability, disability insurance benefits and supplemental security income to disabled individuals. 42 U.S.C. §§ 423 (a); 1382. Pursuant to the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Regulation promulgated under the Act sets forth a five-step process to be used by the ALJ to determine whether or not the claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). The claimant bears the burden of proof at steps one through four whereas the Administration bears the burden at step five. *Poulos v. Comm'r of Soc. Sec.,* 474 F. 3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F. 3d 546, 550 (3d Cir. 2004)). The first step in the sequential evaluation process requires that the ALJ determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a). If it is found that the claimant is engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Alternatively, if it is found that the claimant is not engaged in substantial gainful activity the evaluation proceeds to step two. (*Id.*). At step two, the ALJ must determine whether the claimant suffers from a severe impairment. 20

C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits. However, if the ALJ finds that the showing indicates claimant's disability is severe, the analysis proceeds to step three. At step three, the ALJ then evaluates whether the claimant's severe impairment is listed or is equivalent to an impairment set forth by the Code. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four. Step four requires that the ALJ make specific findings of fact as to the claimant's residual functional capacity and also as to the mental and physical demands of the claimants past relevant work. After both of these finding are made, the ALJ must compare the RFC to the past relevant work to determine whether Claimant retains the RFC to perform the past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994). If at step four, the evaluation indicates that the claimant is unable to resume past relevant work or any employment history does not qualify as past relevant work, the evaluation moves to step five. *Jones*, 364 F.3d at 503. The final step shifts the burden of proof to the "Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience and [RFC]." *Ramirez*, 372 F.3d at 551; 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. *Jones*, 364 F.3d at 503.

Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable
> clinical or laboratory diagnostic techniques, which show the
> existence of a medical impairment that results from anatomical,
> physiological, or psychological abnormalities which could
> reasonably be expected to produce the pain or other symptoms
> alleged and which, when considered with all evidence required to
> be furnished under this paragraph . . . would lead to a conclusion
> that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence

from medical sources include: (1) the examining relationship; (2) the treatment relationship,

including the length, frequency, nature, and extent of the treatment; (3) the supportability of the

opinion; (4) its consistency with the record as a whole; and (5) the specialization of the

individual giving the opinion.  20 C.F.R. § 404.1527(c).

## IV.  DISCUSSION

ALJ Olarsch engaged in the five-step evaluation process and found Plaintiff not disabled

as defined by the Act.  At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since the date of the alleged onset, June 1, 2007. R. at 57.  At step two, ALJ

Olarsch found that Plaintiff suffered from the following severe impairments: back disorder,

thyroid disorder, and affective disorder.  Id.  However, the ALJ determined at step three, that

Plaintiff's impairments or combination impairments neither met nor medically equaled in

severity any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§

404.1520 (d), 404.1525, 404.1526, 416.920 (d), 416.925; 416.926 (b).   Additionally at this step,

ALJ Olarsch determined Plaintiff's residual functional capacity allowed Plaintiff "to perform

light work as defined in 20 CFR §§ 404.1567 (b) and 416.967 (b) except with no more than

occasional postural maneuvers, cannot raise left upper extremity overhead, limited to unskilled

tasks and will be off task ten percent of [the] time." R. at 59.

Next, at the fourth step, the ALJ found that the Plaintiff's residual functional capacity precluded the Plaintiff from performing the requirements of her past relevant work as a Sales Representative or Receptionist. Id. at 64. At the final step, ALJ Olarsch heard the testimony of a vocational expert and found the vocational expert's testimony to be consistent with the information contained in the Dictionary of Occupational Titles. Id. at 65. ALJ Olarsch concluded, after taking into consideration the age, education, work experience, and residual functional capacity of the Plaintiff as well as the vocational expert's testimony, that a significant number of jobs exist in the national economy in which Plaintiff is capable of successfully adjusting to the demands as required by those occupations. Id. Accordingly, under the framework of the sequential evaluation process, the ALJ determined a finding of not disabled appropriate as defined by the Act[4]. Plaintiff challenges the ALJ's RFC determination, the hypothetical posed to the vocational expert, and the weight accorded to Plaintiff's treating physicians. Below the Court will address each contention in turn.

### A. Substantial Evidence Supports ALJ Olarsch's RFC Assessment

Plaintiff argues that the ALJ's RFC assessment failed to accurately depict the Plaintiff's abilities and limitations by neglecting to account for a psychiatric impairment that at step two the ALJ found as severe. Plaintiff further argues that since the ALJ omitted this impairment from his analysis, the occupational base regarding the ability to perform unskilled work did not properly reflect the ability to perform the relevant work. Plaintiff's argument is inapposite and the Court finds that substantial evidence supports ALJ Olarsch's RFC finding.

---

[4] However, it is again noted that due to the Appeals Council's order, Plaintiff's appeal concerns the period of June 1, 2007 through December 27, 2011.

The RFC refers to the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96–8p, 1996 WL 374184, at *1–2. The RFC is an administrative finding that the ALJ is solely responsible for determining, based on consideration of the record as a whole. See 20 C.F.R. § 404.1527(e). In making the RFC determination, the Third Circuit has made clear that an ALJ is not required "to adhere to any set format for explaining his [or her] analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm' of Soc. Sec.*, 274 F. App'x 159, 162-63 (3d Cir. 2008)(quoting *Jones*, 364 F.3d at 505). In accordance with Third Circuit precedent, ALJ Olarsch provided detailed findings related to Plaintiff's limitations and referenced the state examiner opinions and other medical evidence. *See* R. at 59-64. For example, ALJ Olarsch notes that at the previous administrative hearing Plaintiff did not indicate that she suffered from any mental impairments. ALJ Olarsch also cites to the consultative exam of November 2010 which was "unremarkable for evidence of mental impairment with the claimant able to complete almost all tests for memory, focus persistence and judgment." Id. at 62. The ALJ further highlights that the record does not show any history of psychological treatment. Id.

Furthermore, Plaintiff's contention that the ALJ erred by failing to take into account her affective disorder notwithstanding the ALJ's finding at step two of this impairment as severe is irrelevant to the RFC determination because as noted above when determining a claimant's RFC, the ALJ has a duty to consider all evidence before him but is only required to include a claimant's "credibly-established limitations." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.2005). At the outset the ALJ notes that "after careful consideration of the evidence, [he] find[s] that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these

11

symptoms are not entirely credible for the reasons explained in this [administrative] decision." R. at 60.

Specifically, ALJ Olarsch stated that the Plaintiff has not undergone extensive specialized mental health treatment yet the record reveals Plaintiff suffers from anxiety and the medical records indicate she has been prescribed Tranxene by her primary care physician. Id. at 62. However, the administrative decision notes that the record fails to indicate any psychiatric treatment or hospitalizations resulting from a mental impairment. Id. ALJ Olarsch further explained that the record does not support a finding that Plaintiff's mental impairments would be "severe enough to interfere with work function, given that [Plaintiff] apparently worked with this condition in the past, as she reported she has had anxiety for over 25 years at her November 2010 consultative exam" nevertheless the ALJ credited Plaintiff's testimony regarding her physical pain and fatigue, finding that this would "reasonab[ly] interfere with her ability to stay on task or sustain the ability for complex work." Id. at 63. Based on the foregoing, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

**B.  The Vocational Expert's Testimony Constitutes Substantial Evidence to Support the ALJ's RFC Determination**

Plaintiff argues that because the vocational expert based her testimony on the ALJ's flawed RFC determination, the vocational expert's evaluation of the jobs Plaintiff is able to perform is also flawed. Plaintiff additionally argues that the ALJ erred by failing to specifically question the vocational expert as to whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). In support of this argument, Plaintiff claims that although the ALJ found that the vocational expert's testimony is consistent with the information contained in the DOT, the DOT does not specifically address the issue of directionality with respect to a claimant's ability to reach and the DOT fails to enumerate an acceptable portion of the day in which an

individual may be off-task. Plaintiff therefore contends that the standards of SSR 00- 4p were not properly considered. Pl.'s Br. 2. The Court finds Plaintiff's argument unpersuasive.

To the extent that Plaintiff's attack on the hypothetical is that all his alleged impairment were not addressed, he in essence is making another attack on the RFC finding itself (*see Rutherford*, 399 F.3d at 554 n.8), which this Court has already rejected as discussed above. Furthermore, an ALJ's hypothetical question need not include "every impairment *alleged* by a claimant," but only those that are "medically established." *Barnhart*, 399 F.3d at 554 (emphasis in original); *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."). During the administrative hearing, ALJ Olarsch specifically questioned the vocational as to the ability of "a hypothetical individual with the claimant's education, training and work experience, limited to the full range of light work is limited to the performance -- occasional performance of posturals, is limited to or is unable to raise left upper extremity above shoulder, limited to unskilled task" to perform the past relevant work of the Plaintiff. R. at 114. The ALJ further inquired that "if pain limited the hypothetical individual to being off task up to 10 percent of the workday, would the [vocational expert's] answer be the same." Id. at 115. The vocational expert determined that based on the hypothetical posed by the ALJ, jobs exist in excess in the region and national economy that the so described individual could perform. Id. These positions include ticket printer, tagger, cashier, and labeler. Id. The vocational expert is not required to provide anything other than his own experience and knowledge when providing her testimony. See 2000 SSR LEXIS 8, *2. However, a vocational expert's testimony must be based upon a hypothetical that "accurately portrays the claimant's individual physical and mental impairments" that are medically established as provided by ALJ Olarsch. *Podedworny v. Harris*,

745 F.2d 201, 218 (3d Cir.1984). The Court finds that the ALJ's hypothetical adequately captured all of Plaintiff's medically established impairments and the vocational expert rendered her opinion based on her skill, experience and the DOT.

In regards to Plantiff's contentions with any apparent DOT conflicts, the Court highlights that "reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation, " as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

2000 SSR LEXIS 8, *5-6. As specifically resolved above in SSR 00-4p, Plaintiff's argument regarding such apparent conflicts carries no weight and the vocational expert's testimony constitutes substantial evidence.

### C. Substantial Evidence Supports the Weight ALJ Olarsch Afforded to the Medical Opinions

Plaintiff argues that the ALJ failed to accord sufficient weight to the opinions of treating physicians, Dr. Samuel J. Snyder, M.D. and Dr. Joseph DeFeo, M.D, and allocated too much weight to non-treating physician Dr. Howard Baruch. Pl.'s Br. 2. The Court finds Plaintiff's argument without merit.

In support of her argument, Plaintiff purports that "the ALJ is not a medical professional

and therefore may not rely on his own lay interpretation of the record. As such, [the ALJ] may not substitute his own opinion of the record and symptoms in the place of qualified medical professionals that exercised the opportunity to either treat or examine the claimant." Pl.'s Br. 3. It is well established under Third Circuit Precedent and the Act's promulgating regulations that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). Furthermore, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where it is not well supported or there is contradictory evidence. *Chandler*, 667 F.3d at 361 (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); 20 C.F.R. § 404.1527(c)(2); *see also Coleman v. Comm'r. of Soc. Sec. Admin.*, 494 Fed App'x 252, 254 (3d Cir. Sept. 5, 2012) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

      i.    Dr. Samuel Snyder, M.D.

Substantial evidence supports ALJ Olarsch's findings as the administrative decision develops the ALJ's reasoning for placing little weight on Dr. Snyder's opinion. "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to

which supporting explanations are provided." *Plummer*, 186 F.3d at 429. ALJ Olarsch explained that as Dr. Snyder determined that Plaintiff suffers from "constant unremitting pain" for which Dr. Snyder prescribed Percocet, the record did not indicate that Dr. Snyder referred Plaintiff to a pain management specialist or any further treatment for this condition. R. at 61. ALJ Olarsch further explains that although the medical source statement indicated that Dr. Snyder treated the Plaintiff from May 2007 through August 2012, Dr. Snyder's treatment records appear to end in March 2010. Id. Notwithstanding an intervening two-year period providing the opportunity to submit any medical evidence, the record reflects none. Id. ALJ Olarsch further determined that "Dr. Snyder's August 2012 opinion of extreme exertional limitations is not well supported by his own treatment records and therefore his opinion lacks credibility." Id.

      ii.    <u>Dr. Joseph DeFeo, M.D.</u>

Substantial evidence also supports the weight ALJ Olarsch gave to Dr. DeFeo's medical opinion. Id. at 63. As Third Circuit precedent sets forth, "the ALJ [is required to] indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence which would have suggested a contrary disposition. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Accordingly, ALJ Olarsch explains that Dr. DeFeo's assessments are of little probative value as "Dr. DeFeo was obviously hired to perform a one-time exam and evaluation in support of the claimant's applications." Id. Dr. DeFeo assessed Plaintiff as capable of sitting, standing and walking no more than an hour a day and lifting/carrying no more than five pounds occasionally. Id. ALJ Olarsch opines "this near bedridden level of activity is not supported by the record as a whole. Paradoxically, Dr. DeFeo

also indicated the claimant's pain and anxiety to interfere with her ability to work constantly, but still assessed her as capable of moderately stressful work." Id. ALJ Olarsch notes that these assessments conflict however no reasons have been provided to support their reconciliation. Id. In concluding, the ALJ states that as Dr. DeFeo performed his examination for purposes of litigation, his assessment lends less reliability as those of the claimant's maximum functional abilities. Id.

    iii.    <u>Dr. Howard Baruch, M.D.</u>

       Lastly, Plaintiff argues that the ALJ wrongly identified Dr. Baruch as Plaintiff's "personal physician" and gave Dr. Baruch's medical opinion more weight than Plaintiff's treating physician and surgeon. The Court finds Plaintiff's contention without merit as the administrative decision does not acknowledge Dr. Baruch as Plaintiff's treating physician and weighs Dr. Baruch's opinion in light of the record. Id at 61; 64. ALJ Olarsch asserts that based on both Dr. Baruch and Dr. Snyder's assessments the administrative finding incorporates a limitation to overhead reaching with the left upper extremity into the residual functional capacity. Id. As ALJ Olarsch provides more than a mere scintilla of evidence in support of this determination and it is not the role of this Court to reweigh the evidence and reach its own conclusions, the Court affirms ALJ Olarsch's decision on this issue. *Williams*, 970 F.2d at 1182.

## V.   CONCLUSION

The Court has reviewed the entire record and for the foregoing reasons concludes that ALJ Olarsch's decision that the Plaintiff is not disabled is supported by substantial evidence. Accordingly, ALJ Olarsch's decision is affirmed for the relevant time period, June 1, 2007 through December 27, 2011.  An appropriate Order follows this Opinion.

DATED:  November _28_, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE